IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MARTIN D. WILLS                                                                           PLAINTIFF

v.                                      Case No. 3:13-CV-03003

JANET FAYE LACEFIELD                                                                 DEFENDANT

**OPINION AND ORDER**

    Currently before the Court are Plaintiff Martin D. Wills's motion for partial summary judgment (Doc. 46), Defendant Janet Faye Lacefield's motion for leave to file counterclaims (Doc. 56), and the parties' responses, replies, and supporting documents. Wills has moved for partial summary judgment on his claims that Lacefield fraudulently filed a deed, breached the parties' contract, and tortiously interfered with his contractual relationship. Lacefield has moved for leave to file counterclaims for reformation and, alternatively, judicial foreclosure. For the reasons discussed below, Wills's motion for partial summary judgment is DENIED and Lacefield's motion for leave to file counterclaims is GRANTED IN PART.

**I.    Background**

    The relevant facts are largely disputed. For the purpose of considering the instant motions, the Court assumes the following to be true: In 2004, Wills gave Lacefield $15,000 for her to purchase a property in Mountain Home, Arkansas ("Property"). It is undisputed that Wills had no interest in the Property at that time or as a result of Lacefield's completed purchase of the Property. Less than three years later, the parties agreed that Wills would purchase the Property from Lacefield. On April 30, 2007, the parties closed the sale of the Property. As partial payment, Wills executed a promissory note to Lacefield for $15,000 and secured the note with a mortgage on the Property. The note was to be paid off in monthly installments until June 2009, when a balloon payment was

due. In addition to the promissory note, Wills paid another $15,000 in cash and received $15,000 credit for money he provided to Lacefield for her 2004 purchase of the Property. Contemporaneous with these transactions, Wills executed a quitclaim deed for the Property to Lacefield. The purpose of Wills executing the quitclaim deed at the closing of the sale is in dispute. Four days later, Lacefield executed a general warranty deed on the Property to Wills.

Lacefield accepted Wills's monthly payments on the promissory note until November 1, 2008. Lacefield claims that she did not receive another payment from Wills until 93 days later, at which point she claims that he was in default and, therefore, payment was not accepted. Lacefield acknowledges that Wills submitted more payments but claims that those were also late and rejected due to Wills being in default. Wills claims that all payments were submitted on time.

It is undisputed that the mortgage agreement provided only for foreclosure in the case of default. Instead of seeking foreclosure when Lacefield believed Wills was in default, Lacefield sent Wills a letter dated February 11, 2009 ("letter of default") informing him that he was in default and that she had recorded the quitclaim deed he executed on April 30, 2007. At the time Lacefield recorded the quitclaim deed, Wills was under contract with Full Circle Properties ("FCP"). FCP provided property management services and collected rent from tenants who were renting the Property from Wills. Lacefield was aware of the contract between Wills and FCP and, in the letter of default, informed Wills that the tenants had signed a new contract and that rental payments would no longer be received by FCP.

The issues in this case focus on the quitclaim deed, Wills's contested default on his promissory note, and Lacefield's later actions. Wills argues that he never had an interest in the Property when he executed the quitclaim deed—resulting in the deed having no legal effect, that he

2

never defaulted on the note, and that, even if he was in default, the mortgage only provided for foreclosure as a remedy. Lacefield argues that the parties agreed to use the quitclaim deed as a deed in lieu of foreclosure and that Wills was in default. In addition, Lacefield seeks leave to file a counterclaim for reformation of the quitclaim deed if it is deemed void or improper and, alternatively, judicial foreclosure if the deed cannot be reformed.

**II.    Discussion**

Prior to addressing the merits of Will's motion, the Court finds that res judicata does not bar Wills's claims in this case as argued by Lacefield. "[R]es judicata bars relitigation of a subsequent suit when: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies." *Jayel Corp. v. Cochran*, 234 S.W.3d 278, 281 (Ark. 2006) (citations omitted). "Res judicata bars not only the relitigation of claims that were actually litigated in the first suit, but also those that could have been litigated." *Id.* "Where a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies." *Id.*

The litigation history between these parties is extensive. Wills first filed suit in a Baxter County, Arkansas state court ("Baxter One"), which consisted of largely the same claims as in this case, as well as a claim by Lacefield for judicial foreclosure. On August 15, 2012, Baxter One was involuntarily dismissed without prejudice following both parties' blatant disregard for a court order to refrain from filing additional pleadings without leave of court, and the judge's determination that the action had become "unwieldy." (Doc. 52-1, Ex. M). The parties were also involved in another

3

Arkansas state court action, a case in the United States District Court for the Western District of Tennessee, and a separate case before this Court. Those cases involved determinations on orders of protection, conspiracies and civil rights violations alleged by Wills against state and private actors, state law claims for malicious prosecution related to violations of a protective order, and emotional distress stemming from the alleged malicious prosecution. Each of those cases other than Baxter One were resolved on the merits.

Although some of Wills's claims in Baxter One are similar to or the same as his claims in this case, Baxter One was not resolved on the merits and therefore cannot implicate res judicata. Furthermore, all of the other prior litigation between these parties dealt with their failed personal relationship and subsequent criminal actions, whereas the case now before the Court deals with the parties' real estate transaction—an event completely separate from the circumstances surrounding orders of protection, alleged civil rights violations, and malicious prosecution allegations. As a result, the Court finds that the claims in this case are not based on the "same events as the subject matter" of the prior lawsuits other than Baxter One, and therefore res judicata does not bar Wills's claims. *Jayel Corp.*, 234 S.W.3d at 281.

The Court also finds that estoppel would be inappropriate under the circumstances of this case. Lacefield argues that Wills should be estopped from asserting that the quitclaim deed is void due to language in the parties' mortgage agreement. However, the mortgage agreement and the quitclaim deed are separate documents, and the Court will not combine them to find an alleged contradictory position on the part of either party. In addition, for the reasons discussed below, estopping the plaintiff from asserting that the quitclaim deed is void would have no effect.

    **A. Motion for Partial Summary Judgment**

Wills has moved for summary judgment on his claims that Lacefield fraudulently filed a deed, breached the contract between her and Wills, and tortiously interfered with a contract between Wills and FCP. Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the nonmovant and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l. Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 606 (8th Cir. 1999). Once the moving party has met its burden, the nonmovant must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). In order for there to be a genuine issue of material fact, the [nonmovant] must only produce evidence "such that a reasonable jury could return a verdict for the [nonmovant]." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### I. Fraudulent Filing of Deed

The Court finds that Wills's motion for summary judgment on his claim for fraud appears to be in the vein of a request for a declaratory judgment that the quitclaim deed was invalid. As a preliminary matter, the Court finds that the quitclaim deed at issue in this case was valid and took effect on its date of execution—April 30, 2007. However, the Court finds that the deed did not actually transfer any interest in the Property. It is well-established that a quitclaim deed transfers only whatever interest the conveying party has at the time of the quitclaim deed's execution. *Lucado v. A. Hirsch & Co.*, 158 S.W.2d 697, 698 (Ark. 1942); *Bradley Lumber Co. v. Burbridge*, 210

S.W.2d 284, 287–88 (Ark. 1948); *United States v. Speidel*, 562 F.2d 1129, 1132 (8th Cir. 1977). In addition, after-acquired property will ordinarily have no effect on a previously executed quitclaim deed. *Bradley Lumber Co.*, 210 S.W.2d at 287–88; *Chavis v. Hill*, 224 S.W.2d 808, 809 (Ark. 1949). There is no language in the quitclaim deed to otherwise indicate that Wills intended to transfer any after-acquired interest in the Property. Wills merely executed a valid quitclaim deed that transferred whatever interest he held in the Property as of April 30, 2007, which the parties agree was no interest at all. Wills's later receipt of a general warranty deed on the Property from Lacefield had no effect on his earlier execution of the quitclaim deed. Even though Lacefield waited for nearly two years before recording the quitclaim deed, it was still only effective as of the date of its execution—April 30, 2007—when Wills had no interest in the Property.

The Court is aware of the parties' alleged oral agreement surrounding the quitclaim deed; however, "[t]he intent of the grantor should be garnered solely from the language of the deed unless the language of the instrument is ambiguous, uncertain, or doubtful." *Wilson v. Brown*, 897 S.W.2d 546, 548 (Ark. 1995). The Court finds no ambiguity in the language of the quitclaim deed that would warrant considering extrinsic evidence. Furthermore, any oral agreement between the parties concerning the quitclaim deed and its means to convey the property is unenforceable. Ark. Code Ann. § 4-59-101(a)(4) (requiring that contracts concerning interests in land be in writing and signed by the party against whom enforcement sought). Because it is undisputed that Wills owned no interest in the Property at the time the quitclaim deed was executed, the Court must find that no interest was actually transferred and that Lacefield's later recording of the deed had no legal effect.

To the extent Wills is moving for summary judgment on an actual claim for fraud, he has not established each element as defined by Arkansas law. "To establish fraud, [Wills] must show: (1)

a false representation of material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance." *Knight v. Day*, 36 S.W.3d 300, 302–03 (Ark. 2001) (citations omitted). A court may also find constructive fraud under Arkansas law, which "is defined as a breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others." *Id.* at 303. For constructive fraud, "[n]either actual dishonesty nor intent to deceive is an essential element." *Id.* In any case, the "charge of fraud must be sustained by clear, strong, and satisfactory proof. *Id.* (citing *Ark. State Hwy. Comm'n v. Clemmons*, 428 S.W.2d 280 (Ark. 1968)).

Wills has failed to establish any of the elements for fraud as outlined above. The arguments contesting the validity of the quitclaim deed fall short of establishing that Lacefield made any knowingly false representation. The record thus far also does not show on its face that Lacefield made any false representations involving the quitclaim deed and, further, that she had any intent to induce Wills's action in reliance upon such a representation. In any respect, the proof of fraud asserted here is not "clear, strong, and satisfactory." *Id.* For those reasons, the Court finds that summary judgment for a claim of fraud, whether traditional or constructive, should be denied.

### ii. Breach of Contract

Regarding Wills's breach of contract claim, the Court declines to find that recording the quitclaim deed breached any term of the contract between the parties. Even assuming Wills was in default, the quitclaim deed was executed well before that time and, therefore, its recording had no effect on the mortgage agreement, promissory note, or any of the parties' other legal obligations.

*Lucado*, 158 S.W.2d at 698. However, the facts surrounding Wills's possible default and Lacefield's refusal to accept further payments under the promissory note remain in genuine dispute. For those reasons, the Court finds that summary judgment for the breach of contract claim should be denied.

### iii. Tortious Interference with a Contractual Relationship

Under Arkansas law, "[t]he elements of tortious interference that must be proved are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *K.C. Properties of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC*, 280 S.W.3d 1, 11 (Ark. 2008) (citations omitted). In addition, "[Arkansas] law requires that the conduct of the defendant be at least 'improper,' and [courts] look to factors in § 767 of the *Restatement (Second) of Torts* for guidance about what is improper." *Id.* Those factors include: the nature of the actor's conduct; the actor's motive; the interests of the party being interfered with; interests sought to be advanced by the actor; social interests in protecting the actor's actions and the contractual interests of the other; and the proximity or remoteness of the actor's conduct to the interference and relations between the other parties. *Restatement (Second) of Torts* § 767.

The genuine issues of fact remaining for the claim for tortious interference with a contractual relationship include whether Lacefield acted improperly under Arkansas law. Wills argues that the improper conduct here was Lacefield recording the quitclaim deed. As stated, the quitclaim deed was valid, but Lacefield recording it had no effect on the legal rights of the parties because it conveyed no interest. As a result, and given the disputes of fact as to the parties' understanding of

the purpose of the quitclaim deed, the Court cannot find, as a matter of law, that Lacefield acted with improper intent or motive in recording the quitclaim deed. In addition, genuine issues of fact remain concerning whether Wills was actually in default, and what action Lacefield could properly have taken in the event of default. Therefore, the Court finds that summary judgment on this claim should be denied.

### B. Motion for Leave to File Counterclaims

The Court finds that Lacefield's motion for leave to file counterclaims should be granted in part and denied in part. Under Federal Rules of Civil Procedure 13 and 15(a), the district court enjoys discretion in whether to grant a motion for leave to file counterclaims. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Elema-Schonander, Inc. v. K.C.F. Med. Supply Co., Inc.*, 869 F.2d 1124, 1126 (8th Cir. 1989). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [she] ought to be afforded an opportunity to test [her] claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In the absence of apparent undue delay, bad faith, dilatory motive on the part of the movant, undue prejudice to the opposing party by allowing amendment, or the futility of granting the amendment, leave to amend should be freely given. *Id.*

Lacefield's request for leave to file a counterclaim for reformation is denied as futile in light of the Court's finding that the quitclaim deed transferred no interest in the Property. Furthermore, the Court will not consider reforming a deed to include a provision for it to serve as a deed in lieu of foreclosure when the language of that deed is unambiguous. Even assuming that the parties intended the quitclaim deed as a deed in lieu of foreclosure and that the Court could reform it as such, it is still a quitclaim deed that transferred only whatever interest the grantor had on the date of execution, which was no interest. *Lucado*, 158 S.W.2d at 698; *Bradley Lumber Co.*, 210 S.W.2d

at 287–88; *Speidel*, 562 F.2d at 1132. The reformed deed would therefore still not transfer any interest in the Property to Lacefield, and therefore could not serve as a remedy in the event of a default by Wills.

Wills contends that Lacefield's proposed counterclaim for judicial foreclosure should be barred because it is a refiling of a claim from Baxter One that was not refiled within the required one-year period under Arkansas Code Annotated § 16-56-126 ("Arkansas savings clause"). Although Lacefield's attempt to refile the claim for judicial foreclosure comes more than one year after Baxter One's dismissal, Federal Rule of Civil Procedure 15(c)(1)(B) provides that amendments to pleadings relate back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct or transaction set out in that original pleading. Lacefield's counterclaim for judicial foreclosure deals only with the property transaction outlined above and subsequent dispute of Lacefield's actions upon her determination that Wills was in default. As a result, the Court finds that Lacefield's counterclaim relates back to her November 5, 2012 pleading, and, accordingly, Wills's contention that the claim is barred by the one-year limitation in Arkansas's savings clause is without merit. In addition, there are no other considerations that would weigh against the strong presumption to grant Lacefield leave to file this counterclaim. Accordingly, the Court finds that Lacefield's motion for leave to file a counterclaim for judicial foreclosure should be granted.

### III.   Conclusion

For all the reasons set forth above, IT IS ORDERED that Plaintiff's motion for partial summary judgment (Doc. 46) is DENIED. The Court makes the finding, however, that the quitclaim deed at issue in this case was valid as of April 30, 2007, but transferred no interest in the Property.

IT IS FURTHER ORDERED that Defendant's motion for leave to file a counterclaim (Doc. 56) is DENIED as to the request to allow a counterclaim for reformation and GRANTED as to the request to allow a counterclaim for judicial foreclosure.

IT IS SO ORDERED this 10th day of September, 2014.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE